THE PEOPLE, *ex rel.* Parsons, *vs.* BRYAN, police justice, &c.

The provisions of the charter of the city of Rochester, (*Laws of* 1861, *ch.* 143,) giving to the common council power to make, continue, modify and repeal such ordinances, by-laws, &c. as it may deem desirable, to prevent the lumbering of streets, aqueducts, wharves, basins, slips, &c. in any manner whatever; to preserve the Genesee river, and all canals, slips and basins in the city; to prevent and punish the casting or depositing therein any logs or other floating matter, &c.; to prevent and remove all obstructions and accumulations of rubbish, &c. therein, and to punish the authors thereof, &c.; and to impose such penalties, not exceeding $100, for any offense against any such ordinance; and declaring that "nothing in this section contained shall be construed to authorize the common council, or any of its officers, to interfere with any of the laws of this state, &c. or with the acts and regulations of the canal board, in relation to the Erie canal, or any other canal," &c. were obviously designed by the legislature to confer upon the common council the power to make and enforce certain rules, regulations and ordinances which they should deem necessary and proper to preserve the health of the city, and to maintain public peace and good order therein.

Accordingly *held*, that an ordinance declaring it unlawful for the owner of any saw logs, timber or lumber, or for their agents, to keep or cause to be kept (with the exception specified) any saw logs, timber or lumber of any kind, in the Erie canal feeder, or any private or public basin adjoining the same, in the twelfth ward of the city, and giving a penalty of $100 against any one

who shall be guilty of violating the above provisions, was plainly within the powers of the common council, thus conferred by the charter. .

*Held, also,* that the concluding clause of the section of the charter, above recited, was designed simply to prevent a conflict of the city regulations and ordinances with the canal laws, or the acts and regulations of the canal board.

*Held, further,* that the police justice of the city of Rochester, under the sixty-fifth section of the city charter, which makes it his duty to attend to all complaints of a criminal nature which may come before him, has jurisdiction to hold cognizance of a complaint for a violation of the ordinance above mentioned.

CERTIORARI to the defendant, police justice of the city of Rochester, requiring him to certify the summons or warrant, pleadings and judgment, with all things touching the same, in an action commenced before him by the city of Rochester, against the relator, in which action the said city recovered judgment against the relator for a penalty of $100, and costs $1.

*F. A. Macomber,* for the relator.

*E. A. Raymond,* city attorney, for the defendant,

*By the Court,* WELLES, J. The return of the defendant to the writ of certiorari shows that the complaint before him stated that the city of Rochester was a municipal corporation created by an act of the legislature, passed April 28, 1834, entitled "An act to incorporate the city of Rochester," and of the several acts passed subsequent thereto and amendatory thereof; and the defendant Thomas Parsons being the agent of the owner of certain logs and timber, at the city aforesaid, on the 1st day of September, 1865, and on divers days since then, kept and caused to be kept logs and timber in the Erie canal feeder in the twelfth ward of said city, and in private basins adjoining said feeder, to a greater number than twenty-five at one time ; and in so doing he did not float the said logs or timber from the Erie canal into said feeder or basins for the purpose of the immediate

removal of the same therefrom to his premises, or the premises of said owner, contrary to the provisions of sections one and three of "an ordinance relating to the Erie canal feeder, the basins adjoining the same and the Genesee river," passed by the common council of said city, February 17, 1863, and in force at all the days and times before mentioned; and demanded judgment against the defendant, the said Thomas Parsons, for $100, the penalty in said ordinance, with the costs of the action.

The return also shows that the said Parsons appeared before the said police justice and, for answer to said complaint, admitted the violation alleged and pleaded by way of avoidance:

1st. That said ordinance was illegal and not authorized by the city of Rochester.

2d. That the pretended provisions of said charter, under which said ordinance was passed, together with said ordinance, were illegal and unconstitutional, and in violation of the laws and regulations pertaining to the canals of this state. It does not appear that any evidence was given before the police justice, and the return concludes as follows: "That after hearing arguments of city attorney in behalf of the city, and the defendant in his own behalf, I rendered judgment in favor of the plaintiff, and against the defendant, on the 18th day of December, 1865, for penalty $100, costs $1."

On the 17th day of February, 1863, the common council of the city of Rochester passed the ordinance referred to in the complaint, the first and third sections of which are as follows:

"Section 1. It shall be unlawful for the owner or owners of any saw log or logs, or timber or lumber of any kind, or for the agent or agents of any such owner or owners as aforesaid, to keep or cause to be kept, (except as hereinafter provided,) any said log or logs, or any timber or lumber of any kind, in the Erie canal feeder, or any private or public basin

adjoining the same, in the twelfth ward of the city of Rochester.

§ 3. Nothing contained in either section of this ordinance shall prevent any owner or owners of any saw logs, timber or lumber, or their agent or agents, from floating the same from the Erie canal into said canal feeder or public or private basin adjoining the same, for the purpose of immediate removal of the same therefrom to his or their premises. But in no case shall the logs, timber or lumber of any kind by this section permitted to be floated into said feeder or basins by any one, owner or agent, as aforesaid, exceed twenty-five pieces in number." Section five of the ordinance gives a penalty of one hundred dollars against any one who shall be guilty of violating sections one or two of the same ordinance.

It is contended on the part of the relator, among other things, that the common council of the city had no power to pass the ordinance in question.

The charter of the city, (*Laws of* 1861, *ch.* 143, *p.* 264,) is divided into twelve titles and two hundred and sixty-eight sections. Title 3 is headed, "Powers and duties of the common council." Section forty, which is a part of title three, provides that the common council shall have power to make, continue, modify and repeal such ordinances, by-laws and regulations, as it may deem desirable within the city, for the following purposes. Then follows twenty-eight subdivisions, the seventh of which is as follows: "To prevent the lumbering of streets, avenues, walks, public squares, lanes, alleys, bridges, aqueducts, wharves, basins or slips, in any manner whatever."

Title eleven is headed, "Public health." Section two hundred and fifty-eight, which is a part of that title, provides that the common council shall have power to pass all such ordinances as they shall think proper and necessary to preserve the Genesee river, and all canals, slips and basins in the city; to prevent and punish the casting or depositing therein, or on the banks thereof, any earth, ashes or other

The People *v.* Bryan.

heavy substances, filth, logs or other floating matter; to prevent and remove all obstructions and accumulations of filth or rubbish therein, and to punish the authors thereof; to regulate and prescribe the mode and speed of coming to and departing from the wharves and streets of the city by steam boats, canal boats and other craft and vessels, and the disposition of the sails, yards, anchors and appurtenances thereof while entering, leaving or abiding in the city; and to regulate and prescribe by such ordinances or through their officers such a location of every canal boat, steamboat or other craft or vessel or float, and such changes of station in, and use of the same, as may be proper in order to promote order therein, and the safety and equal convenience, as near as may be, of all such boats, vessels, crafts and floats; and may impose such penalties, not exceeding one hundred dollars for any offense, against any such ordinance. The section concludes as follows: "Nothing in this section contained shall be construed to authorize the common council or any of its officers to interfere with any of the laws of this state now or hereafter to be enacted, or with the acts and regulations of the canal board in relation to the Erie canal, or any other canal, being the property of the state of New York."

The foregoing provisions of the charter were obviously designed by the legislature to confer upon the common council the power to make and enforce certain rules, regulations and ordinances which they should deem necessary and proper to preserve the health of the city, and to maintain public peace and good order therein. The sections of the ordinance referred to are plainly within the powers of the common council thus conferred by the charter. They do not in any respect interfere with any law of the state, nor were they shown to be an interference with any act or regulation of the canal board, in relation to the Erie canal or other canal owned by the state of New York. They do not direct or permit the doing of any act or acts which the canal board was shown to have forbidden, nor forbid the doing of any

The People *v.* Bryan.

act which the canal board was shown to have permitted or directed. Neither is there any such conflict between the ordinances and the canal laws of the state. It could not have been the intention of the legislature to restrict the common council, in their sanitary and police regulations, to such provisions of the canal laws, or such acts and regulations of the canal board, as might incidentally affect the health and public peace and good order of the city. The concluding clause of the two hundred and fifty-eighth section of the charter, above recited, was unquestionably designed simply to prevent a conflict of the city regulations and ordinances with the canal laws, or the acts and regulations of the canal board. It might well happen that the interests of the city would imperiously require regulations and ordinances beyond what the canal laws, or the canal board, having in view only the general interests of the canals and their revenues, had provided; and, in such cases, the common council were authorized to adopt such further regulations, and pass such ordinances, for the government of the city, as they might think necessary and proper, provided they did not interfere with those laws of the legislature, or the acts and regulations of the canal board, without producing any such interference or conflict.

An objection is now taken, by the counsel for the relator, to the jurisdiction of the police justice to hold cognizance of the complaint in this case; but we think such objection is answered by the sixty-fifth section of the charter, which makes it his duty to attend to all complaints of a criminal nature which may come before him, at all reasonable hours.

If the foregoing views are correct, the judgment of the police justice should be affirmed.

Ordered accordingly.

[Monroe General Term, September 3, 1866. *Welles, E. Darwin Smith* and *Johnson,* Justices.]